JOHN S. GRANT, Appellant,

*vs.*

ABBIE H. BODWELL and others.

Knox. Opinion December 11, 1886.

*Executors and administrators. Distribution of personal estate. Alabama claims.*

Personal estate of an intestate for distribution among his heirs, descends to those living at the time of his death; and the decree of distribution should name each one of such heirs and his share, and if any have died in the meantime, the share of each one so deceased should be decreed to be paid to the executor or administrator of such deceased heir.

Money received upon a judgment of the court of commissioners of Alabama claims, by an administrator, becomes assets in his hands to be administered and distributed by him, as a part of his intestate's estate; and when the same is distributed to an executor of a deceased heir of such intestate, it becomes assets in the hands of such executor, to be administered by him according to the will of his testator.

By the residuary clause of her will, a testatrix gave her son " all the residue and remainder of my estate, real, personal and mixed, wherever found and however situated." *Held:* That this passed to the son, a sum recovered from an Alabama claim by a claimant's administrator and distributed to the executor of such will.

ON EXCEPTIONS.

Appeal from the decision of the judge of probate. The presiding justice sustained the appeal and reversed the decree of the probate court. To this ruling the appellees alleged exceptions.

The opinion states the material facts.

*True P. Pierce,* for appellant.

In *Thurston* v. *Lowder,* 40 Maine, 197, a question precisely in point is considered. An award was made by virtue of a treaty with the Mexican government for a vessel which had been destroyed. The treaty and award were both made long after the death of the owner of the vessel, and the court held that it made a part of his estate, although the treaty which made its collection possible was entered into long after his death. In the opinion in that case, Judge RICE quotes from the opinion in *Foster* v. *Fifield,* 20 Pick. 67, another case precisely in point.

This fund constituting a part of the estate of Priscilla E. Cables, at her death it descended with the rest of her estate to Carrie E. Cables. This court has once decided that Priscilla Prescott was the only heir of Carrie E. Cables. *Cables* v. *Prescott,* 67 Maine, 582.

The appeal was properly taken, as the appellant was the party aggrieved, and the only party, by the order appealed from. He also claims under an heir at law, and for that reason has an additional right of appeal, as shown by § 23, c. 63, R. S.; § 29, c. 63, R. S.

The appeal having been taken, the judgment and all the proceedings of the probate court are vacated, and the Supreme Court has full power to reverse or affirm, in whole or in part, pass any decree that the judge of probate should have passed, or remit the case to the probate court for further proceedings. *Gilman* v. *Gilman,* 53 Maine, 184; *Carvill* v. *Carvill,* 73 Maine, 136; § 28, c. 63, R. S.

The rule laid down in *Knowlton* v. *Johnson,* 46 Maine, 489, does not apply to the case at bar.

*Charles E. Littlefield,* for appellees, cited: *Moody* v. *Hutchinson,* 44 Maine, 57; *Bradstreet* v. *Bradstreet,* 64 Maine,

211; *Fowle* v. *Coe*, 63 Maine, 248; R. S., c. 65, § 27; *Hughes* v. *Farrar*. 45 Maine, 72; 64 Maine, 583; *Knowlton* v. *Johnson*, 46 Maine, 489.

HASKELL, J.   Priscilla E. Cables died intestate, leaving an only daughter, who died in her minority, unmarried, without issue, prior to distribution of her mother's estate, leaving a grandmother, Priscilla E. Prescott, her sole heir.   *Cables* v. *Prescott*, 67 Maine, 582.

The grandmother, Mrs. Prescott, died testate, and afterwards, the administrator of Mrs. Cables settled his account in the probate court, showing a balance of personal estate in his hands for distribution, amounting to two thousand and ninety-two dollars and forty-six cents, which, on petition, the judge of probate ordered distributed among all the heirs of Mrs. Cables. From that decree an appeal was taken to this court, and at *nisi prius* the decree was reversed, and the administrator of Mrs. Cables was ordered to pay the balance named to the estate of the grandmother, Mrs. Prescott; and the case comes up on exception.

At the death of Mrs. Cables, her real estate descended to her heirs, and her personal estate to her administrator to be administered, and the balance distributed among her heirs; heirs living at her decease, instead of such only as may have survived at the time of distribution.

The judge of probate could only decree distribution among the heirs of the intestate as they existed at her death, and this he should do by naming each one in the decree; and if any heir had died prior to distribution, then its share should have been ordered to be paid to its legal representative, that it might be administered and subjected to the payment of any debts existing against the estate of such deceased heir; for without administration upon the estate of such deceased heir, it can not be judicially known what sum ought to be distributed, and to whom it should be paid.

If the decree of the judge of probate had directed the estate in question to be paid to the legal representative of the intestate's

deceased daughter and sole heir, no fault could be found with it, but it is treated as meaning that distribution shall be made among the intestate's next of kin, living at the date of the decree, as they are entitled by the law of descent; given such meaning, its scope was beyond the power of the judge of probate to decree, and it could not protect an administrator, who should obey it. True, in this case the sole heir was a minor, who died unmarried and without issue, and there can be little or no risk in the administrator's disposing of the estate in his hands in the same manner that her administrator would do, if there had been one, that is, by paying it to the executor of the grandmother's will, who would then dispose of it lawfully; but the rule is inflexible; an heir takes his share of the realty at the death of his ancestor, and then acquires a right to his distributive share of the personalty, whatever it may prove to be; and when acquired it becomes subjected to his debts, by means of the proper administration upon his estate. If the share of one heir may be treated as extinguished in a decree for distribution, why may not all be imperilled for such prudential reasons as have weight with a judge of probate? The decree must conform to the statute, and order distribution among the heirs of the deceased, who were living at his death, and if any of them be dead, then, that the share of that one be paid to his legal representative. R. S., c. 65, § 27; c. 75, §§ 1, 8; *Knowlton, appellant,* v. *Johnson, administrator,* 46 Maine, 489.

In this view of the case, the exceptions must be sustained, and a decree should be entered below, ordering payment to the estate of, or legal representative of, Carrie E. Cables, with costs as before provided. After such decree, the administrator, under the peculiar circumstances of this case, may conclude to assume the risk of paying directly to the executor of Mrs. Prescott, and thereby save the trouble and expense of an apparently needless administration, but of this he must judge, as the risk, if any, which he assumes in doing it, will be his own. *Cables* v. *Prescott, supra.*

Mrs. Cables, in her life-time, had lost by a confederate cruiser, a part of the brig "Joseph," and under the act of

congress touching the Alabama claims, her administrator recovered on account of that brig, the sum now held by him ready for distribution, and it is contended by the appellees that the same can not become a part of the estate of Mrs. Prescott and pass to her devisees, but that the same should be distributed among the kindred of Mrs. Cables, who are identical with the kindred of Mrs. Prescott, and some of them are persons not her devisees.

Mrs. Cables suffered the loss of her property by the act of a foreign enemy, in defiance of the sovereign power of the people of the United States, under a constitution declared in the preamble thereof to have been ordained to provide for the common defense. To the government, she had a right to look for protection, and from it, hope for redress, even though it be so long deferred as to make the "heart sick." Twenty years elapsed and relief came. The government found itself in possession of a fund, received from a foreign power, to indemnify citizens of the United States who had suffered loss by certain confederate cruisers, for whose acts that power was responsible, and after fully satisfying such losses, a balance of the fund remained in the federal treasury. Inasmuch as other citizens had suffered loss by other confederate cruisers engaged in the same business of destroying vessels belonging to citizens of the United States, congress, regarding its duty to procure indemnity to all citizens for losses suffered at the hand of an enemy, applied the balance of this fund to such purpose, and the legal representative of Mrs. Cables, by judgment of court, recovered in her behalf the money now in his hands. He recovered it in satisfaction of a loss that she had suffered, and not as a gratuity, or bounty given to her living kindred. *Comegys* v. *Vasse,* 1 Peters, 193, 215–217; *Erwin* v. *United States,* 97 U. S. 392; *Phelps* v. *McDonald,* 99 U. S. 298, 304; *Bachman* v. *Lawson,* 109 U. S. 659; *Leonard* v. *Nye,* 125 Mass. 455.

Although collected after her death, it was in satisfaction of a loss that she had sustained, and in payment of it. She could not recover it in her life-time, but her right to recover it was a constituent part of her estate, and vested in her administrator at

her death, and is to be distributed as personal estate. *Thurston, administrator*, v. *Lowder, administrator*, 40 Maine, 197.

When received by the executor of the grandmother, Mrs. Prescott, it becomes a part of her estate, and must be distributed according to her will. She declares that she makes her will, "intending hereby to dispose of all my estate." The residuary clause devises to the appellant, her son, "all the residue and remainder of my estate, real, personal and mixed, wherever found, and however situated." The intention is manifest, that all the estate, whether actually received before, or after her death, should pass under the will. The act under which the fund was recovered was passed the same day that the will was made, and the granddaughter had died many years before, leaving the testatrix her sole heir. It is unlike the case of *Blaisdell* v. *Hight*, 69 Maine, 306, where the language used was held insufficient to pass certain after acquired real estate, or the case of *Dunlap* v. *Dunlap*, 74 Maine, 402, where the testator made a schedule of his property, and devised the residue, after certain legacies, to a niece.

> *Exceptions sustained. Decree according to this opinion.*

PETERS, C. J., DANFORTH, VIRGIN, LIBBEY and FOSTER, JJ., concurred.