**SHACKELFORD et al. v. FIFER et al.**

No. 44073.

Supreme Court of Missouri.

Division No. 1.

June 14, 1954.

Arthur N. Adams, Jr., John E. Hon-, singer, Kansas City, Wilson D. Hill, Rich-, mond, for appellants.

Chas L. Graham, Christian F. Stipp, Carrollton, for respondents, Trustees and Stewards of Hardin M. E. Church.

## HOLLINGSWORTH, Judge.

This is an action under the Declaratory Judgment Act to construe the will of Martha Shackelford, deceased.

Plaintiffs and two of the defendants, Rosie Fifer and Sam Reed, who apparently defaulted in the court below, are the heirs at law of testatrix. The several beneficiaries named in the will are made parties defendant, but only the Trustees (and Stewards, who were also jointly named as defendants with the Trustees) of the Hardin Methodist Episcopal Church, South, and the Executor, C. O. Mansur, Sr., pleaded to the petition. Their pleadings, insofar as pertinent here, sought dismissal of the petition on the ground it did not state a cause of action, which pleas the court sustained. Plaintiffs appealed.

The essential question is whether the will disposes of $30,735.31 inherited by testatrix from her brother, John J. Shackelford, subsequent to the execution of the will. The petition alleges that testatrix died intestate as to said money and that plaintiffs and defendants Rosie Fifer and Sam Reed take the same as the heirs at law of testatrix. The respondent Trustees (and Stewards) of Hardin Methodist Episcopal Church contend that the residuary clause of the will bequeaths said property to them. The trial court determined from the facts alleged in the petition, as hereinafter set forth, that the residuary clause of the will did bequeath said money to respondents.

Testatrix, at all the times herein mentioned a single woman, residing in Ray County, Missouri, died on January 27, 1952, survived by the appellants and defendants Rosie Fifer and Sam Reed, all of whom are cousins of testatrix.

The will, which was executed on the 11th day of January, 1938, was thereafter admitted to probate. It provides in the respective items thereof: (1) that all of testatrix's real estate, household goods and personal effects, except a 40 acre tract of real estate described in item 9 of the will, be sold; (2) payment of funeral and administration expenses; (3) purchase and erection of a grave marker; (4, 5, 6 and 7) "personal" gifts of $100 to A. J. Shackelford, $300 to J. E. Shackelford, $50 to Bruna McGuire, and $50 to Grace Frazier; (8) $200 to the Trustees of Lavelock Cemetery; and

"Ninth: I will, devise, and bequeath the following described real estate to wit:

All the Northeast quarter of the Southeast quarter of Section Sixteen (16), Township Fifty-two (52), and Range twenty-six (26) containing forty acres, more or less, all in Ray County, Missouri,

to my brother John J. Shackelford in fee simple, provided, however, that the said John J. Shackelford appear in person before the Probate Court of Ray County, within ten months after my death and accept said devise by filing a written acceptance thereof with said Court within said time, and if said John J. Shackelford fails or refuses to appear and file the acceptance in writing within the time specified or if he should die before my death or if he should die after my death but before he has filed the written acceptance as provided for, I will and direct said real estate be sold, in the same manner as my other property as provided for in the First Paragraph of this Will, and the proceeds and money derived from said sale shall follow the remainder and residue of my estate and go to the

Church as provided for in paragraph Ten of this Will.

"Tenth: I will, direct and bequeath to the Trustees of the Hardin Methoddist Episcopal Church, South, located at Hardin, Ray County, Missouri, and to their successors in office, the residue and remainder of my estate to be held by said Trustees in trust for said church. I direct that the money be invested by said Trustees in United States Liberty Bonds if they can be purchased at a reasonable price, and if not, then said money be invested in stocks and bonds which in the best judgment of said Trustees will yield the greatest yearly income. I direct that the income derived therefrom be used towards the payment of the salary of the pastor of the Hardin Methodist Episcopal Church, South, located at Hardin, Ray County, Missouri, and for no other purpose."

In Item Eleven, the will nominated C. O. Mansur, Sr., as executor thereof. He was thereafter duly appointed and did qualify as such.

At the time of the execution of the will, testatrix's income was "modest"; she was possessed of "a few chattels" and the 40 acre tract of land described in the will, the total value of all of her property then being about $3000. Her brother, John J. Shackelford, to whom she devised the said real estate in Item 9, had long since removed from Ray County, Missouri, and his whereabouts and financial condition were unknown to testatrix. Testatrix had "no expectancy of any inheritance or change of fortune, and * * * the bequests and devises set forth in said Last Will and Testament were made in view of her circumstances and estate, without any knowledge or expectancy on her part that she would ever acquire by gift, inheritance or otherwise any more or different property than that which was described therein and held by her at said date."

In 1946, testatrix conveyed to a third person the 40 acres devised to her brother, John J. Shackelford, in Item 9 of the will. On April 24, 1950, testatrix was legally declared to be of unsound mind and incapable of managing her affairs, the probate court finding that such had been her condition "for several years" prior to the hearing. (There is no suggestion that testatrix was not mentally sound when she executed the will.) A "few months" prior to the date on which testatrix was adjudged insane, her said brother died in the State of Colorado, leaving testatrix as his sole heir at law and testatrix thereafter received from his estate by way of inheritance the sum of $30,753.31. Due, however, to her insanity, she never knew of nor could she have comprehended his death or her inheritance from his estate or that she had come into possession of any additional property.

The petition pleaded that the sale by testatrix in 1946 of the 40 acre tract devised to John J. Shackelford in item 9 of the will revoked *in toto* items 9 and 10 thereof; that the after-acquired property received by testatrix from her deceased brother's estate did not pass to the Trustees (and Stewards) of the Church; that testatrix died intestate as to said after-acquired money; that if the conveyance of the 40 acre tract did not revoke the bequest to the church as to the residue of the then known assets of her estate, then paragraph 10 is void as to the after-acquired property "as being contrary to her intention as expressed therein, and that said testatrix intended by said will and paragraph aforesaid to restrict said bequest to the described real estate therein set forth and the rest and residue of her estate at the then existing state of things, and not to pass after-acquired property or additional money far out of proportion to the small and modest estate which testatrix had at the time she made the will aforesaid." The prayer was for a finding that it was not the intention of testatrix to include the after-acquired property in item 10 of her will and for judgment declaring that testatrix died intestate as to said property and that upon her death title thereto vested in her heirs.

■ Appellants have cited numerous cases and texts holding that while a will speaks from the death of the testator, yet when it is to be construed for the purpose of ascertaining testator's intention, the court should consider his situation and the circumstances surrounding testator at the time of the execution of the will. There can be no quarrel with that rule. It is supported by abundant authority. Lansdale v. Dearing, 351 Mo. 356, 173 S.W.2d 25, 29, 147 A.L.R. 728; Obetz v. Boatmen's National Bank of St. Louis, 361 Mo. 221, 234 S.W.2d 618, 621; Limbaugh's Missouri Practice, Vol. 2, § 1152, p. 708. But "the paramont rule of will construction, to which all others must yield, is that the testatrix's intent governs, unless contrary to some positive rule of law. And that intention must be ascertained primarily from the will as a whole. The courts will not attempt to make a new will or an equitable distribution of the estate. If the will is unambiguous and leaves no room for doubt as to the testatrix's intention, auxiliary rules of construction cannot be resorted to. But if the contrary be true, then recourse to such rules is permissible, and clauses apparently in conflict may be harmonized in the light of environmental circumstances, if consistent with the testatrix's intention as manifested by the whole will." St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344, 349. See also American Red Cross v. Hannibal National Bank, 360 Mo. 297, 228 S.W.2d 679, 682; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23 [3–5].

■■ In this case there is no language of doubtful meaning to be construed. The will here is a simply and clearly written instrument, on its face disposing of all of testatrix's property. It leaves nothing to surmise or speculation as to the nature, character or extent of the gift made to each of the beneficiaries. After setting forth five specific legacies, aggregating $700, four of which are described as "personal" gifts to each of the named legatees, it then devises 40 acres of land to testatrix's brother, John J. Shackelford, on certain conditions. Inasmuch as she sold the real estate prior to her death, the devise thereof to him lapsed. Do the proceeds from the sale then pass to the heirs of testatrix as property of which she died intestate? Clearly, they do not. The residuary clause, in express terms, bequeaths "*the residue and remainder of my estate*" to the respondent Trustees of Hardin Methodist Episcopal Church. Such a bequest constitutes a *general*, as distinguished from a *particular* residuary clause, the former serving to include all classes and kinds of property, the latter serving to include a restricted fund or kind of property. 57 Am.Jur., Wills, § 1415, pp. 946 et seq.

■ As to the $30,735.31 inherited by testatrix from her said brother: It has always been the rule at common law that as to personal property a will speaks as of the death of the testator, unless a contrary intention clearly appears and that a general residuary clause in a will serves to pass all personal property thereafter acquired by the testator. 57 Am.Jur., Wills, § 1210, p. 796. It has long been the rule in Missouri that a general residuary clause passes title to all property, real and personal, owned by the testator at the time of his death. Liggat v. Hart, 23 Mo. 127, 136. See also Applegate v. Smith, 31 Mo. 166; Webb v. Archibald, 128 Mo. 299, 34 S.W. 54; Hannibal Trust Co. v. Elzea, 315 Mo. 485, 504, 286 S.W. 371, 379; Beffa v. Peterein, 354 Mo. 876, 191 S.W.2d 633, 634.

The numerous cases cited by appellants to the effect that the court should look to the circumstances existing at the time the will was executed to determine testatrix's intention are not in point. All of them deal with patent or latent ambiguities. In the following cases there were patent ambiguities in the language of the will: Lynn v. Stricker, Mo.App., 213 S.W.2d 672; Grundmann v. Wilde, 346 Mo. 327, 141 S.W.2d 778; Obetz v. Boatmen's National Bank of St. Louis, 361 Mo. 221, 234 S.W.2d 618; Albert v. Safe Deposit

& Trust Co., 132 Md. 104, 103 A. 130. In Adams v. Conqueror Trust Co., 358 Mo. 673, 217 S.W.2d 476, 7 A.L.R.2d 268, a change in the corporate structure of a corporation rendered uncertain a provision in the will bequeathing a specified number of shares of stock in said corporation, for which shares of different proportions of the corporate assets had been thereafter substituted. In Cameron v. Frazer, 187 Md. 368, 50 A.2d 243, there was no residuary clause in the will. Appellants place strong reliance upon the case of Dunlap v. Dunlap, 74 Me. 402. That case is fairly summarized in the syllabus thereof as follows:

"The testator, a bachelor, eighty years of age, after bequeathing to one of his nephews with whom he had his home, certain stocks of the value of fifty dollars, made to the wife of this nephew a bequest in the following terms: 'And to my beloved niece, A T D, who carefully nursed me and did all she could to alleviate my distress and contribute to my comfort, I hereby give and bequeath the remainder of the little property I shall have when I depart from this earth, *a brief schedule of which bequest follows,*' comprising one hundred and thirty dollars and various articles, out of which is reserved two debts, leaving about seventy-five dollars in value. About eleven months after the execution of the will, and four months before his own decease, his only brother, resident in Massachusetts, died intestate. From his brother's estate he received nothing during his life-time; but his estate, some more than two years after the testator's decease, received two thousand four hundred and four dollars as the distributive share belonging to it. Held, That the clause, 'the remainder of the little · property I shall leave,' etc. considered in connection with the other portions of the will, and read by the light of the circumstances under which the will was made, the state of his property, his kindred and the like, does not include the money inherited from his brother's estate, but that the same is intestate property, to be distributed by the rules of descent." (Emphasis ours.)

It is unnecessary to place any stamp of approval or disapproval on that case. The portion of the residuary clause above emphasized shows it to be a *particular* or *special* clause limiting the residuary clause to the property described in the "schedule". The distinction is noted in two later Maine cases, in which general residuary clauses were under consideration: Grant v. Bodwell, 78 Me. 460, 7 A. 12, 15, and Pierce v. Stidworthy, 79 Me. 234, 9 A. 617. In the first case, the court said, "It (the case under consideration) is unlike * * * the case of Dunlap v. Dunlap, 74 Me. 402, where the testator made a schedule of his property, and devised the residue, after certain legacies, to a niece."

There being no ambiguity in the instant will and it clearly showing the intention of testatrix to dispose of all property of which she died seized, the mere fact that her estate was thereafter materially augmented by an unexpected and, to her, uncomprehended, inheritance from her brother does not affect its construction. In Compton v. Rixeys' Ex'rs, 124 Va. 548, 549, 98 S.E. 651, 652, 5 A.L.R. 465, 467, the court said: "The intention of the testator which is to be considered in the interpretation of his will is the intention spoken by the words of the will, where he has so spoken as to disclose his intention, and not the intention to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at time of the execution of his will." See also Rogers v. English, 130 Conn. 332, 33 A.2d 540, 147 A.L.R. 812. And in Liggat v. Hart, 23 Mo. 127, 138, the court said: "Men know that their wills are not to take effect until they die, and they make them for the purpose of fixing · the distribution of their property *from that moment,* * * *."

Consequently, under the facts in this case, as set forth in the petition, we hold that the court correctly ruled that plaintiffs' petition should be dismissed with prejudice.

The judgment is affirmed.

All concur.