**MERCANTILE TRUST CO., N.A., et al., Plaintiffs-Respondents,**

**v.**

**Amelia O. DAVIS et al., Defendants-Respondents, and**

**Amelia S. Davis et al., minors, by and through their court-appointed guardian ad litem, William M. Ward, Jr., Defendants-Appellants.**

**No. 58780.**

Supreme Court of Missouri, En Banc.

April 14, 1975.

Rehearing Denied May 12, 1975.

Thomas S. McPheeters, Jr., Arthur B. Shepley, Jr., Hollye E. Stolz, St. Louis, for defendants-respondents.

Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

William M. Ward, Jr., St. Louis, Guardian Ad Litem and Attorney for appellants.

BARDGETT, Judge.

This appeal comes here upon motion to transfer filed by Amelia O. Davis, et al., defendants-respondents, after opinion by the Missouri Court of Appeals, St. Louis District, pursuant to Rule 83.02, V.A.M.R. The cause will be considered as on direct appeal. Art. V, § 10, Mo.Const., V.A.M.S., as amended 1970.

This equity suit was instituted by testamentary trustees to construe that part of the will of Amelia C. Scudder wherein she bequeathed the residue of her estate. As will be seen infra, the testatrix used the word "issue" several times in Article 10 of her will. The ultimate question is whether the share of one of the daughters, Martha S. Overall, whose death on April 25, 1972, precipitated this lawsuit, is distributable on her death or is to be delayed until the youngest "issue" of Martha S. Overall, a grandchild, Amelia S. Davis, born January 27, 1955, reaches the age of twenty-one or sooner dies.

In order to determine that question, the court must decide whether (1) "issue", as used in the will, includes all lineal descendants, i. e., children, grandchildren, great-grandchildren, etc., of testatrix's daughters, and (2) if "issue" does include those persons generally, whether the testatrix intended that the grandchildren of her daughter should share with their living parent, and (3) if not, whether the testatrix intended that distribution to the next lineal descendant of her daughters, living at the time of the daughter's death, was to be delayed until the youngest of the daughter's issue attained age twenty-one or sooner died with the receipt by the next lineal descendant of that person's distributive share remaining contingent upon that next lineal descendant surviving the noted event, i. e., the youngest issue attaining age twenty-one or dying sooner.

The trustees of the Scudder trust, Mercantile Trust Company, et al., were plaintiffs below and are respondents here. Plaintiffs' petition stated their quandary as follows: "Upon the death of Martha C. S. Overall, an event which has occurred, the Trustees are directed, pursuant to the terms of Article Tenth just recited, to hold said [one-third] share for her 'issue' until 'all survivors of such issue reach twenty-one years of age . . .' Plaintiffs-Trustees are uncertain and in doubt about the construction of the above language with respect to whom and when they are to make distribution of the principal of the share held in trust for Martha C. S. Overall. The trustees are also in doubt as to whether they are directed, or authorized in their discretion, to distribute the income of this share during the period after the death of Martha C. S. Overall until the principal of such share is to be distributed or if distribution of the principal should be deferred and to whom they are directed or authorized to distribute such income. In the event the word 'issue' is read as 'descendants' of Martha C. S. Overall, the Trustees are uncertain as to whether the language 'to hold said share for her "issue" until survivors of such issue reach twenty-one years of age . . .' refers to all descendants of Martha C. S. Overall living at her death, regardless of the degree of relationship, or only to those descendants of Martha C. S. Overall who would take under the direction to distribute to 'such issue, per stirpes,' or to only descendants of a class not more remote than a specific degree such as grandchildren, great-grandchildren, etc."

The genealogy of the parties is shown on the following chart:

## SCUDDER FAMILY TREE

Amelia C. Scudder
3/18/1862
(Dec'd 2/10/23)

- Martha S. Overall
  10/2/1886
  (Dec'd 4/25/72)
  - John H. Overall, Jr.
    4/10/13 (Dec'd 9/29/67)
    - John H. Overall III
      12/28/48
    - Martha R. Overall
      11/29/47
  - Amelia O. Davis
    10/21/11
    - Samuel C. Davis, Jr.
      9/25/37
    - G. Victor Davis, Jr.
      1/25/49
  - Maude O. Davis
    6/11/18
    - David O. Davis
      7/13/51
    - Amelia S. Davis
      1/27/55

- Maude S. Conner
  1/7/1891
  - Rene DiRosa (no children)
    5/14/19
  - Rosalie M. Ewing
    8/16/21
    - Rosalie E. Engler
      12/6/47
    - Marian S. Ewing
      4/13/51
    - Nathaniel T. Ewing
      3/28/61
    - One son now deceased

- Gladys S. McRee
  5/27/1888
  - Gladys McRee Caulk
    6/1/15
    - John R. Caulk III
      3/11/37
      - John R. Caulk IV
        10/9/61
      - Nathaniel M. Caulk
        12/11/63
    - Sally C. Russell
      12/21/39
      - Charles W. Russell, Jr.
        5/14/69

The pertinent portions of Article 10 of the will, the residuary portion, are as follows:

"TENTH: (1)[1] All the rest, residue and remainder of my property of whatever it may consist and wheresoever situate, I give, bequeath and devise . . . IN TRUST, for the use and benefit of such of my three daughters as shall survive me and the issue living at my death of any daughter of mine who dies before me, per stirpes; and to make disposition thereof as hereinafter provided.

"(2) When any daughter of mine reaches the age of fifty years she shall receive from my trustees one hundred thousand dollars ($100,000) out of the capital of the trust property held under this paragraph, as her property absolutely, and her interest in the trust estate shall thereupon be reduced in that amount and her income from the trust shall be reduced accordingly . . .

"(3) When any daughter of mine dies, leaving no issue her surviving, the share of my trust estate from which she was receiving the income at the time of her death, shall then be held by my trustees for, or shall pass direct to, as the case may be, my then surviving daughter or daughters and the issue then living of any deceased daughter or daughters of mine, per stirpes, as their other respective shares of my trust estate are then being held in trust or otherwise, and shall thereafter pass in each instance as such other respective shares are disposed of hereunder.

"(4) When any daughter of mine shall die, leaving issue her surviving, the share of my said trust estate from which said daughter was then receiving or, had she survived me would have received the income, shall be held in trust for such issue until all survivors of such issue reach twenty-one years of age, at which time the trust as to such share shall cease and such share shall pass to the survivors of such issue, per stirpes, as their property absolutely. Should all of such last mentioned issue die before the youngest survivor of them reaches the age of twenty-one years, then such issue's share of the trust property shall then be held by my trustees for, or shall pass direct to, as the case may be, my then surviving daughter or daughters and the issue then living of any deceased daughter or daughters of mine, per stirpes, as their other respective shares of my trust estate are then being held in trust or otherwise, and shall thereafter pass in each instance as such other respective shares are disposed of hereunder.

"(5) Should all of my daughters die without issue them surviving my last surviving daughter may dispose of all the then trust estate by her last will.

"(6) My trustees shall have full power to invest and manage the trust property and collect the income thereof, and after paying the necessary expenses of the trust, (including five per centum of all income for their own services, but no further charge by them for transferring and conveying the trust property at the termination of the trust), shall pay the remainder of such income to the beneficiaries of the trust in as nearly equal quarter-annual installments as practicable. . . ."

The circuit court made extensive findings of fact and conclusions of law. It is the Martha S. Overall branch of the Scudder family that is of particular concern in this case. The circuit court's finding with reference to Article 10 of the will and the distribution it ordered within the Overall branch is as follows:

"7. From a consideration of all of the provisions of the will of said Amelia Cupples Scudder and the codicils thereto, and particularly Article TENTH thereof and

---

1. The paragraphs of Article 10 were not numbered in the will. We have done so as a matter of reference and convenience.

the other portions of said will which make provision for gifts to the children and grandchildren of the testatrix who were living when the will and codicils were executed and were therefore known to her, the Court finds that it was her intent, in using the word 'issue' in said Article TENTH, to refer to children of a deceased daughter and, in case any such child should have predeceased her mother, descendants of such child who would take under a direction to distribute to 'such issue, per stirpes'. And the Court finds that it was not the intention of the testatrix to refer to all the descendants of a deceased daughter living at her death regardless of the degree of relationship. The Court further finds that it was the intent of the testatrix to defer distribution of a portion of the share of the trust estate which had been held for a deceased daughter only in the event a child of a deceased daughter should be at the time under the age of 21 years; and that in the event all children of a deceased daughter should be over the age of 21 years at the time of the death of the daughter in question, then it was the intent of the testatrix that distribution should be made immediately to the surviving children of such deceased daughter and the descendants of any child of such deceased daughter who may have predeceased her on a per stirpital [sic] basis.

"8. Accordingly, the Court finds that in the case of the share of the trust estate from which Martha C. S. Overall was receiving the income during her lifetime, the corpus thereof, together with all income received thereon since the death of Martha C. S. Overall, should now be distributed absolutely and free from trust to the living children of said Martha C. S. Overall, all of whom are over the age of 21, and to the descendants of the deceased son of said Martha C. S. Overall, in the following proportions:

| | |
|---|---|
| John H. Overall III | one-sixth |
| Martha R. Overall | one-sixth |
| Amelia O. Davis | one-third |
| Maude O. Davis | one-third" |

The judgment as to the Overall branch is the same as finding No. 8 set forth above.

As noted, an appeal was taken to the Missouri Court of Appeals, St. Louis District, by the defendants-appellants, all of whom are minors. The circuit court rejected their contention which was that the time for distribution under the will was to be delayed until the youngest of these minors attained age twenty-one or sooner died, and that the income from the Martha S. Overall share should accumulate during the interim. The court ordered immediate distribution to those living issue who stood next in line of descent to Martha S. Overall, per stirpes. Their position is stated in appellants' brief in the court of appeals as follows:

"Appellants submit that if the language of testatrix's Will is to be followed and the intent of testatrix as expressed in her will is to be faithfully carried out, then the share of Martha C. S. Overall in the trust estate created under the Last Will and Testament of Amelia Cupples Scudder, deceased, should be distributed to the following persons in the following proportions:

| | |
|---|---|
| John H. Overall III | one-sixth |
| Martha R. Overall | one-sixth |
| Amelia O. Davis | one-third |
| Maude O. Davis | one-third |

*if they are living at such time as Appellant Amelia S. Davis, a minor, obtains the age of twenty-one or dies,* whichever occurs first, or to the then living descendants per stirpes of Martha C. S. Overall, who also survived said Martha C. S. Overall at her death, if one or more of them is not then living. Appellants further submit that the income of this share of Martha C. S. Overall in the trust estate created under the Last Will and Testament of Amelia Cupples Scudder should be accumulated and added to the principal of such share until such time as Amelia S. Davis, a minor, obtains the age of twenty-one and said share becomes distributable as hereinabove set forth. While Article TENTH does not

specifically provide for the accumulation of income attributable to this share of the trust, this is implied since Article TENTH clearly states that the share '. . . shall be held in trust for such issue until all survivors of such issue reach twenty-one years of age . . .' and provides for no distribution until that time. . . . "

The court of appeals reversed the decree of the circuit court and upheld appellants' position, after which this court transferred the appeal as set forth at the outset of this opinion.

Some cases have held that the word "issue" as used in a will to be an ambiguous term. Freund v. Schilling, 222 Mo.App. 901, 6 S.W.2d 673 (1928). In *Freund* the testator's will provided that "the balance in equal shares to the living lawful issue of my brother, Henry Mahnken, and my sister, Anna Mahnken Grother." At the time the will was made, Henry and Anna were dead and at that time, and the time of trial, four of Henry's children were alive and three other children had died before the will was made. Two deceased children left one child each who were alive at trial and the third deceased child, Maggie Michaelis, left nine children who were alive at trial. Anna Grother left four children living at time of trial and, as noted, Henry left surviving him four children and eleven grandchildren. Thus, it is seen that Henry and Anna had a total of eleven children between them. The trial court ordered the estate to be divided into eleven equal parts, each of which is representative of the share that each child of Henry and Anna would have inherited if all eleven children had survived the testator—a per stirpes distribution. The nine grandchildren who were the children of Maggie Michaelis, one of Henry's deceased children, appealed contending that the fund should be divided equally among all of the children and grandchildren of Henry and Anna, nineteen equal parts—a per capita distribution.

On appeal the court noted the divided authority as to whether distribution should be per capita or per stirpes and said, 6 S. W.2d at 675: "The lack of harmony among the authorities on the subject tends strongly to show that the language in the will *'in equal shares to the living lawful issue'* is lacking in clearness and we, therefore, resort to the statutes of Utah [the place where the will was made] in order to arrive at a correct solution on the subject." The court then affirmed the per stirpes distribution order of the circuit court.

As noted, the court said that the term "issue" as used in wills is ambiguous, but the court also said that the word as used in the will in *Freund* concededly included all of the defendants. The ambiguity existed because the will did not indicate in what manner the "issue" were to take.

We see from this that the word "issue" as used in wills can perform two functions. One is to designate a class of persons who *may* be entitled to share in the estate to the exclusion of other classes. In this sense "issue" operates to exclude collateral and ancestral heirs and limits potential takers to descendants but does not necessarily delineate the manner, per stirpes or per capita, by which the descendants will take. The second function the word "issue" can perform is to designate which persons among the class (issue) will be entitled to take upon the happening of a given event.

In the instant case, as in Freund v. Schilling, *supra*, there is no uncertainty or ambiguity presented by the use of the word issue as a term of limitation so as to exclude collateral and ancestral heirs. All defendants are blood descendants of testatrix's daughters and are their respective "issue".

■ The word "issue" as used by testatrix in Article 10 of her will performed a dual function. First, it limited the class of potential beneficiaries to the lineal descendants of the three daughters of testatrix thereby excluding lineal ancestral and collateral heirs. Second, by using "issue"

in the third paragraph of Article 10 instead of "children", the testatrix indicated her intent to be that the share of a deceased daughter should not pass over to the surviving daughter or daughters merely because the deceased daughter was not survived by children. The use of the word "issue" kept the deceased daughter's share in that daughter's branch of the family if the daughter was survived by any issue—grandchildren, great-grandchildren, etc.—even though the daughter's children did not survive her.

In paragraph · four of Article 10, testatrix continued to use the word issue to describe a class of potential takers but, since paragraph four also directs distribution to "issue", the word was intended to designate those persons who would be actually entitled to receive the benefits of the trust upon the happening of a specified event—the death of a daughter of testatrix.

Did the testatrix intend for the word "issue" as used in paragraph four of Article 10 to mean that all persons coming within the general definition of "issue" should share in the deceased daughter's share? In other words, did the testatrix intend that a grandchild, Amelia S. Davis, of her daughter, Martha S. Overall, should compete with and share with her living mother, Maude O. Davis?

Appellants argue that this is not the real issue and that the only question is whether testatrix intended the word "issue" in paragraph four of Article 10 to include all persons coming within the general meaning of the word so as to delay distribution if any one of the issue is under age twenty-one. Nevertheless, the court is of the opinion that it is important to determine who the distributees are in order to decide the question of whether distribution was intended by the testatrix to be delayed and remain contingent upon the youngest issue reaching age twenty-one.

If by the term "issue" as used in Article 10, paragraph four, the testatrix meant those persons who come within the limitation of "issue" and who would, under the statutes of descent and distribution existing when the will was made in 1918, be entitled to inherit, then she did not intend for a more remote descendant to compete with or share with that descendant's living mother. The will here admits of doubt on this question.

In Merchantile Trust Co. Nat'l Assn. v. Brown, 468 S.W.2d 8 (Mo.1971), the question was whether a testator intended a per stirpes or per capita distribution among the *descendants* of his grandniece. The grandniece was survived by a daughter, Ruth Brown, another daughter, Mary Louise Love (who had a son, John Allan Love, III, and a grandson, Jeffery Scott Love), and a granddaughter, Nathalie Arribas-Munoz, the daughter of Mrs. Richard, a predeceased child. The trial court held that all five of these persons were descendants of the grandniece and ordered a per capita distribution, each receiving a one-fifth share of the trust. On appeal, this court reversed and ordered a per stirpital distribution to be made, one-third to Ruth Brown, a daughter of the grandniece; one-third to Mary Louise Love, another daughter; and one-third to Nathalie Arribas-Munoz, the daughter of a predeceased child of the grandniece.

All of the persons mentioned in *Brown* were descendants of the grandniece, just as all of the defendants in the instant case are "issue" of testatrix's daughters. The question in *Brown* was which of the descendants did the testator intend to receive a share of the trust fund at the death of his grandniece, and the will admitted of doubt on the question.

The will in *Brown* was written in 1913. The court made an exhaustive review of the law in other jurisdictions and observed that "[a]pparently, when this will was written in 1913, no Missouri court had adopted either the English rule [per capita] or the Massachusetts rule [per stirpes] in a case involving a gift to descendants or issue where there were no other words or

terms to explain or qualify the term 'descendants' or 'issue' . . . . Hence, we must conclude that there was no established precedent by decision in Missouri on which we could say that counsel relied in specifying that the residuary trust should pass to descendants of Mrs. Simpkins [grandniece] at her death." 468 S.W.2d at 13.

The court went on to say:

"However, there were various statutory provisions relating to estates which used the term 'descendants.' This court has held in the case of First Trust Co. v. Myers, 351 Mo. 899, 174 S.W.2d 378, 382, when seeking to ascertain the intent of a testator, that, 'in doubtful cases like this the courts seeking firm ground have said that the statutes of descents and distributions furnish "a safe guide." Such statutes announce public policy and are generally accepted as being fair and just. That "safe guide" can and should be followed in this case because no positive provision of the will prevents it, but on the contrary the language used by the testator invites it.

" 'In Lyon v. Acker, 33 Conn. 222, 223, an extensively quoted case, it was said: "The statute of distribution governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide." '

.    .    .    .    .    .

"We find by referring to RSMo 1909, Art. XV, relating to descents and distributions, that § 332 provided to whom real and personal estates should descend from one who died intestate. It provided first for an inheritance by children or their descendants; in the absence of children or their descendants, the section provided successively the order in which others or their descendants would take. Then in § 336 (now § 474.020, V.A.M.S.) it was provided that when there were several lineal descendants of equal degree of consanguinity to the intestate (or other person), they should take per capita, but that when part were dead and part living, the issue should take per

stirpes, i.e., the share of the deceased parent. As used in those statutes, the term 'descendants' did not mean or imply that all living descendants, regardless of the degree of consanguinity, should take per capita, *and did not mean or imply that a descendant would share equally with and compete with their own living parent or grandparent*. Rather, in the factual situation in this case, it would indicate a per stirpes distribution. We conclude that in the absence of language or expression in the will indicating a contrary intention, testator's attorney should be considered to have looked to the statutory provisions in his use of the term 'descendants' to describe a class of beneficiaries, the same as he did in the use of the term 'heirs at law.'

.    .    .    .    .    .

"We have decided this case, as previously indicated, on the basis of what we conclude to have been the meaning of the term 'descendants' in Missouri at the time this will was written. We note, however, that the construction which we have adopted is in accord with most subsequent decisions on the subject and is in harmony with the present generally prevailing view. It also is in accord with the definition of 'issue' in the present Missouri Probate Code. See § 472.010(16), V.A.M.S." (Emphasis ours.)

Section 472.010(16), RSMo 1969, V.A.M.S., provides: " 'Issue' of a person, when used to refer to persons who take by intestate succession, includes adopted children and all lawful lineal descendants, except those who are the lineal descendants of living lineal descendants of the intestate."

■    The known consequences of using the term "issue" without further qualification was to identify as the beneficiaries of the trust the next lineal descendants who are alive at the end of the measuring life of the trust. In the instant case, the measuring life of the principal trust as to the Overall branch was Martha S. Overall. Because the will does not further qualify "issue", we look to the statutes of descent

and distribution to determine who among her descendants are entitled to receive a distributive share. Brown, *supra*; Freund, *supra*.

■ As noted in Brown, *supra,* the definition of issue who are entitled to take in § 472.010(16) [2] is the same as that which prevailed in 1913 by reason of RSMo1909, §§ 332 and 336, and as noted supra those statutes were still in force in 1918. Thus, by definition, lineal descendants of living lineal descendants are excluded. This is also in keeping with the other rules of construction set forth in *Brown* which is that, in the absence of an expressed intent to the contary, children are not to compete with or share with their living parents.

■ The court holds that testatrix, by using the word "issue" to refer to persons who would take under her will, meant the lineal descendants of her daughters but excluded the lineal descendants of living lineal descendants of testatrix's daughters. She did not express an intention that children would compete with or share with their living parents.

In the instant case, this means that the issue of Martha S. Overall, deceased, who are entitled to receive a distributive share of the Overall part of the trust are Amelia O. Davis and Maude O. Davis (daughters of Martha S. Overall) and John H. Overall, III, and Martha R. Overall (children of Martha S. Overall's deceased son John), all of whom are over age 21. Since the distribution is to be per stirpes, Amelia O. Davis and Maude O. Davis will each receive one-third of Martha S. Overall's, deceased, share. John H. Overall, III, and Martha R. Overall will take by representation of their father, John H. Overall, Jr., deceased, with each receiving one-sixth of the Martha S. Overall's, deceased, share.

■ Is distribution to the four persons named above to be delayed and the receipt of their share to remain contingent upon their living until Amelia S. Davis, a minor, reaches age 21 or sooner dies?

The court holds that distribution to the children of Martha S. Overall, a daughter of testatrix, was not intended to be delayed beyond the death of Martha S. Overall unless one or more of them were minors. In the instant case, the surviving children of Martha S. Overall (Amelia O. Davis and Maude O. Davis) were well over twenty-one when their mother died. The third child, John H. Overall, Jr., predeceased his mother but left surviving issue—children. Those two children, John H. Overall, III, and Martha R. Overall, would not share in that portion of the trust which passes to Amelia O. Davis and Maude O. Davis but only in their father's share. As such, it is not reasonable that testatrix, who throughout the will demonstrated particular benevolent interest in her three daughters and her grandchildren, would have intended that distribution to them of shares of the trust, which would not go to more remote issue (great-grandchildren), be delayed.

This is made clear in paragraph four of Article 10 where the testatrix set forth what would happen to a daughter's share if she died leaving minor issue. The shares of the other two surviving daughters were not to be disturbed. Only the share of the deceased daughter was to continue in trust until the youngest issue became age 21. If, thereafter, a second daughter died leaving children all over age 21, then distribution was to take place without regard to the existence of the first deceased daughter's share then being held in trust for her minor children.

Again, the court is of the opinion that issue here meant issue entitled to inherit

2. Neither Brown, *supra*, nor the instant case involves any question regarding the state of the law as to adopted children. See Graves v. Graves, 349 Mo. 722, 163 S.W.2d 544 (1942); Kindred v. Anderson, 357 Mo. 564, 209 S.W.2d 912 (1948); and Comments in 3 Maus, Missouri Practice, Probate Law and Practice, § 359 (1960).

and excluded lineal descendants of living lineal descendants.

Therefore, had either John H. Overall, III, or Martha R. Overall (children of John H. Overall, Jr., deceased) been minors at the time of Martha S. Overall's death, then the per stirpes share of John H. Overall, Jr., would have been held in trust until John III and Martha R. reached age 21 and during that interim period they would receive the income as provided in the sixth paragraph of Article 10.

In this fashion testatrix provided for the support of a daughter's minor issue whose parent, issue of a daughter of testatrix, was dead at the time the first and principal trust terminated as to each daughter's share upon the death of that daughter.

Here, both John H. Overall, III, and Martha R. Overall, children of John H. Overall, Jr., deceased, were over twenty-one at the time of Martha S. Overall's death. Therefore, the terms of the will as to them have been satisfied and they are entitled to their distributive share of their deceased father's share.

■ It is noted that the circuit court concluded that testatrix meant the children of her daughters when she used the word "issue" in paragraph four of Article 10. Our interpretation, although reaching the same result, is slightly different. We hold the testatrix meant issue of her daughters and not just children of her daughters when she made her will. However, because testatrix did not specify which of the issue would actually take upon the death of a daughter of testatrix, the court, following Brown, *supra*, and Freund, *supra*, has applied the Missouri laws of descent and distribution to the word issue for the purpose of arriving at the testatrix's intent.

The court has considered the various cases and authorities cited in the briefs but finds Brown, *supra*, to be most persuasive and controlling of the instant appeal.

In paragraph two of the judgment and decree, the circuit court adjudicated the future contingent rights of members of the Maude S. Connor and Gladys S. McRee branches of the family. We cannot anticipate with precision the state of facts which may obtain at the death of either Maude S. Connor or Gladys S. McRee and, therefore, will not undertake a hypothetical adjudication of their relative rights. See State ex rel. Justices, etc. v. Prewett, 20 Mo. 165 (1854), and Campbell v. Spotts, 331 Mo. 974, 55 S.W.2d 986[6] (1932), where the court adopted the words of 26 Ruling Case Law, § 232: "While a trustee has the right to ask the instructions of the court as to his present duties, he cannot request instructions of the court as to what may be his duty upon the happening of future contingencies."

Obviously, however, this opinion will control the administration of the trust as to the Maude S. Connor and Gladys S. McRee branches of the family with reference to the meaning of the term "issue", and relitigation of the questions decided herein would not be anticipated.

Paragraph one of the circuit court's judgment is:

"1. The corpus of the share of the trust estate created under the will of Amelia Cupples Scudder, from which Martha C. S. Overall received the income during her lifetime, should now be distributed, together with all income received thereon since the death of said Martha C. S. Overall, absolutely and free from trust, to the following defendants in the following proportions:

| "John H. Overall III | One-sixth |
| Martha R. Overall | One-sixth |
| Amelia O. Davis | One-third |
| Maude O. Davis | One-third" |

By paragraph three of its decree, the trial court reserved jurisdiction over the question of attorneys' fees and guardian ad litem fees.

The judgment and decree of the circuit court is (1) affirmed as to paragraph one; (2) reversed and ordered vacated as to paragraph two; and (3) remanded for consideration of the matters set forth in paragraph three.

All of the Judges concur.